## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF NORTH CAROLINA
## DURHAM DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Dorothy Elizabeth Williams, | ) | |
| | ) | |
| Debtor. | ) | Case No. 06-80695 13 |
| _____ | ) | |
| | ) | |
| Regional Acceptance Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | Ad. Proc. No. 06-09024 |
| | ) | |
| v. | ) | |
| | ) | |
| Dorothy Elizabeth Williams | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### ORDER AND OPINION

This matter came before the court for hearing on December 7, 2006 upon the Defendant's

Motion to Dismiss.  At the hearing, James S. Livermon, III appeared on behalf of the Plaintiff,

Regional Acceptance Corporation; Edward Boltz appeared on behalf of the Defendant and

Debtor, Dorothy Elizabeth Williams; and Benjamin Lovell appeared on behalf of the Chapter 13

Trustee.   Based upon a review of the pleadings and the evidence presented, this court makes the

following findings of fact and conclusions of law:

### BACKGROUND

The facts of this case are not in dispute.  Dorothy Elizabeth Williams (the "Debtor")

purchased a 2002 Mercury Sable (the "Vehicle") on February 24, 2004, and Regional

Acceptance Corporation ("RAC") provided the purchase money financing for this Vehicle. As

part of this transaction, the Debtor signed a Retail Installment Sales Contract on February 24, 2004, agreeing to pay $15,362.88, the amount financed under the Note, in 60 equal monthly payments of $392.57.  In addition, the Debtor pledged the Vehicle as security for the loan.

On January 8, 2006, the Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code, and Richard M. Hutson II was appointed as the Chapter 13 Trustee.  The Debtor filed her proposed Chapter 13 plan (the "Plan") at the time of the filing of the petition. The Plan valued the Vehicle at $8,730.00 with the remaining balance of RAC's claim listed as unsecured.  The Plan did not disclose that the Vehicle was purchased within the 910-day period preceding the Petition Date or identify RAC's claim as a 910 claim.

The Debtor attended her § 341 Meeting of Creditors on February 24, 2006, and on March 2, 2006, the Chapter 13 Trustee filed the Notice and Proposed Order of Confirmation ("Proposed Order"), which was served upon the Debtor's creditors, including RAC, pursuant to Bankruptcy Rule 2002.  The Proposed Order provided for RAC to have a secured claim in the amount of $8,730.00 and allowed RAC 60 days following confirmation to object to the valuation of its secured claim. No parties objected to the Proposed Order and on April 4, 2006, the Plan was confirmed.  RAC signed and mailed a Proof of Claim to the Chapter 13 Trustee on April 3, 2006 asserting a secured claim of $12,179.77 (the "Claim") and attaching documents evidencing a secured purchase money loan made within 910 days of the petition date.  RAC did not file an objection to the Plan during the 60-day objection period.

On September 20, 2006, RAC commenced this adversary proceeding seeking a determination by the court that the portion of RAC's secured claim not paid through the Plan not

be discharged, and that the Vehicle remain subject to RAC's lien following completion of the Plan.

## ISSUE PRESENTED

The primary issue is whether, under 11 U.S.C. § 1325(a)(5) and the "Hanging Paragraph" that follows § 1325(a)(9), RAC's lien and the unpaid balance of its claim will survive the Debtor's discharge because the Debtor's confirmed Chapter 13 Plan bifurcates the claim of RAC into secured and unsecured portions despite the fact that the Debtor purchased and financed the motor vehicle securing the claim for their personal use within 910 days prior to their bankruptcy filing.

## DISCUSSION

Section 1325 of the Bankruptcy Code sets forth the circumstances under which a bankruptcy court may confirm a Chapter 13 debtor's reorganization plan. With respect to secured claims, § 1325(a)(5) provides that the court shall confirm a plan if:

> (5) with respect to each allowed secured claim provided for by the plan–
> (A) the holder of such claim has accepted the plan;
> (B)(i) the plan provides that–
> > (I) the holder of such claim retain the lien securing such claim until the earlier of–
> > (aa) the payment of the underlying debt determined under nonbankruptcy law; or
> > (bb) discharge under section 1328; and
> > (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;
> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
> (iii) if–
> > (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and

> > (II) the holder of the claim is secured by personal property, the
> > amount of such payments shall not be less than an amount sufficient
> > to provide to the holder of such claim adequate protection during the
> > period of the plan; or
>
> (C) the debtor surrenders the property securing such claim to such holder;

In essence, pursuant to § 1325(a)(5), the court shall confirm a plan if, with regard to each

secured claim, one of the following conditions has been satisfied:  (1) the holder has accepted the

plan; (2) the plan provides for the claim in a manner consistent with subsection (B); or (3) the

debtor surrenders the collateral.

With the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of

2005 ("BAPCPA"), Congress inserted an unnumbered paragraph after § 1325(a)(9) that refers

back to § 1325(a)(5) and addresses, among other things, the treatment of claims secured by

vehicles in Chapter 13 plans.  The "hanging paragraph" after § 1325(a)(9), as it is commonly

known, states:

> For purposes of paragraph (5), section 506 shall not apply to a claim
> described in that paragraph if the creditor has a purchase money
> security interest securing the debt that is the subject of the claim, the
> debt was incurred within the 910-day preceding the date of the filing
> of the petition, and the collateral for that debt consists of a motor
> vehicle (as defined in section 30102 of title 49) acquired for the
> personal use of the debtor, or if collateral for that debt consists of any
> other thing of value, if the debt was incurred during the 1-year period
> preceding that filing.

This paragraph prohibits the applicability of § 506 to purchase money loans for the purchase of

vehicles for personal use within the 910-day period preceding the petition date ("910 claims")

for the purposes of § 1325(a)(5).  Section 506 allows, among other things, for the bifurcation of

an undersecured claim into a secured claim to the extent of the value of the collateral and an

unsecured claim to the extent that the value of such creditor's interest is less than the amount of

4

the allowed claim or, in other words, the "cramdown" of a secured claim to the value of the collateral. 11 U.S.C. § 506(a). Thus, most courts have found that, under BAPCPA, a plan that provides for the cramdown of a 910 claim does not comply with § 1325(a)(5)(B) as modified by the hanging paragraph. *See, e.g., In re Horn*, 338 B.R. 110 (Bankr. M.D. Ala. 2006); *In re Brown*, 339 B.R. 818 (Bankr. S.D. Ga. 2006)*; In re Rowley*, 348 B.R. 479 (Bankr. S.D. Ill. 2006); *In re Robinson*, 338 B.R. 70 (Bankr. W.D. Mo. 2006); *In re Johnson,* 337 B.R. 269 (Bankr. M.D.N.C. 2006); *In re Sparks*, 346 B.R. 767 (Bankr. S.D. Ohio 2006); *In re Montoya*, 341 B.R. 41 (Bankr. D. Utah 2006). As a result of BAPCPA, in order to comply with § 1325(a)(5)(B), a debtor must treat a secured creditor with a 910 claim as if that creditor were fully secured.

In this case, the Debtor's Plan provides for the cramdown of RAC's secured claim; therefore, the Plan does not comply with § 1325(a)(5)(B). In addition, the Debtor has clearly not surrendered the collateral as allowed by § 1325(a)(5)(C). The only remaining way in which the Debtor's Plan could comply with one of the three options set forth in § 1325(a)(5) is if RAC, the holder of the secured claim, accepted the Plan. Because RAC did not object to the Debtor's Plan, the court must determine whether RAC's failure to object constitutes acceptance.

RAC cites two cases in support of its argument that its failure to timely object to the Debtor's Plan does not constitute acceptance, and therefore, the Debtor's Plan violates § 1325(a)(5). In *In re Montoya,* the bankruptcy court addressed the issue of whether a plan that provided for a bifurcated 910 claim to which no party objected could be confirmed despite the Plan's noncompliance with the hanging paragraph provisions. 341 B.R. 41, 42 (Bankr. D. Utah 2006). The court followed the majority of other courts in finding that the hanging paragraph in

§1325(a) precluded a Chapter 13 debtor from cramming down a 910 claim. *Id.* at 44.  In addition, the court found that the plan provision bifurcating the claim did not comply with the provisions of § 1325(a)(5)(B) and that the creditor's failure to object could not be deemed acceptance pursuant to § 1325(a)(5)(A). *Id.* at 45.  The court recognized that, "if a plan is properly noticed and otherwise meets the requirements of § 1325(a), the Court may deem a secured creditor's silence to constitute acceptance of a plan and the plan may be confirmed." *Id.* However, the court held that when the terms of a plan are patently inconsistent with the Bankruptcy Code, a creditor's silence will not constitute acceptance and the improper secured creditor treatment will not become *res judicata. Id.*

In *In re Montgomery,* the Bankruptcy Court for the Eastern District of Kentucky also addressed the issue of whether a plan in which a 910 claim has been bifurcated into secured and unsecured portions may be confirmed.   341 B.R. 843 (Bankr. E.D. Ky. 2006).  Following *Montoya*, the court concluded that such a plan violated the hanging paragraph provisions and could not be confirmed even in the absence of a timely objection. *Id.* at 845.

RAC urges the court to follow these cases and find that its failure to object does not constitute acceptance of the Plan.  The determination of whether RAC's silence constitutes acceptance is intertwined with issues of *res judicata* and due process.  A finding that RAC's failure to object was equivalent to acceptance of the Plan is meaningless if the Plan is not *res judicata* and entitled to preclusive effect.  The court cannot find that the Plan is entitled to preclusive effect if such a finding would result in the denial of due process to RAC.

As a general rule, an order confirming a Chapter 13 plan is treated as *res judicata* and is not subject to collateral attack.  28 U.S.C. § 1327(a); *In re Linkous*, 990 F. 2d 160, 162 (4th Cir.

6

1993). As with every general rule, however, there are exceptions. In particular, the Fourth

Circuit has clearly established that if notice is insufficient, a Chapter 13 confirmation order will

not be entitled to preclusive effect. *See In re Banks*, 299 F.3d 296, 302 (4th Cir. 2002); *Cen-Pen*

*Corp. v. Hanson (In re Hanson)*, 58 F.3d 89, 93-94 (4th Cir. 1995); *In re Linkous*, 990 F. 2d at

162.

   In *Linkous,* the debtor's Chapter 13 plan provided that a secured creditor's lien would be

stripped down to the value of its collateral. 990 F.2d at160. The secured creditor received notice

of the plan, but this notice did not make reference to the debtor's intent to value the claim

pursuant to § 506(a). The creditor did not file an objection, yet subsequently moved to revoke

the order confirming the plan. *Id.* at 161. The court noted that "[t]he procedural framework for

valuing collateral as a part of a section 506(a) determination is contained in Bankruptcy Rule

3012." *Id.* at 162. The court found that as a result of Rule 3012, a debtor was required to notify a

creditor of an intent to hold a valuation hearing. *Id.* at 163. The Court stated, "[N]otwithstanding

the recognized responsibilities of the creditor, the debtor also must meet certain burdens. A

debtor should inform the *secured* creditor of an intent to reclassify its claim into partially secured

and partially unsecured status. Placing such a responsibility with the debtor is both logical and

not unduly burdensome." *Id.* While an adversary proceeding was not required, the Court held

that notice provided to the secured creditor of the plan confirmation hearing was inadequate to

satisfy that creditor's due process rights. *Id.*

   In *Hanson*, the debtors attempted to avoid a secured creditor's lien by treating that

creditor as unsecured in their Chapter 13 plan. 58 F.3d at 91. The secured creditor, Cen-Pen,

received notice of the plan prior to confirmation but failed to object. The debtors argued that

confirmation of the plan was res judicata; however, the Fourth Circuit reasoned that a "potential defendant has the right to expect that the proper procedures will be followed." *Id.* at 93. The court concluded that "confirmation generally cannot have preclusive effect as to the validity of a lien, which must be resolved in an adversary proceeding." *Id.*

The Fourth Circuit has more recently addressed this issue as it relates to student loan creditors. In *Banks*, the Fourth Circuit held that a Chapter 13 plan provision mandating that postpetition interest would not accrue on student loan debts was not entitled to preclusive effect. 299 F.3d 296, 302-03. In that case, the debtor brought an adversary proceeding seeking a declaratory judgment that, as a result of his Chapter 13 plan, he was not liable for postpetition interest on his student loan debts. *Id.* at 299. The lender had received notice of the proposed plan and had not filed an objection. After the debtor completed his plan, the lender asserted that the postpetition interest remained due. *Id.* The court found that, while notice of the proposed plan was served on all creditors pursuant to Rule 2002, this notice was insufficient. *Id.* at 302. Because an adversary proceeding is required to determine the dischargeability of student loan debts, the court reasoned that the lender was entitled to service of process pursuant to Rule 7004. *Id.* at 301. The court stated, "Bankruptcy Rule 2002(b) does not require specific notice of plan provisions affecting a particular creditor, nor does it require the notice to be served in any particular manner or upon any particular person. . . . When the rights of specific parties become an issue, however, service of the initiating motion or objection on the affected party is required." *Id.* (citing *In re Boykin*, 246 B.R. 825, 828-29 (Bankr. E.D. Va. 2000)).

The importance of the degree of notice to which a secured creditor is entitled when its lien is at issue was highlighted recently by the United States District Court for this district in *In*

*re E-Z Serve Convenience Stores, Inc.* 318 B.R. 631 (M.D.N.C. 2004). In that case, the court found that absent adequate notice, an order binding a secured party will not be afforded preclusive effect. *Id.* at 635. Following *Banks*, the court stated,

> In a bankruptcy case, there are many actions taken in the case which affect the general administration of the case and all creditors generally, but none specifically. These matters usually require notice, but not service of process. When the rights of specific parties are at issue, service of process on the party is required. The Fourth Circuit made clear in *Banks* that the issue of due process was not merely a question of whether the party was given notice, but that due process requires a party to receive the degree of notice specified in the Bankruptcy Code and Rules.

*Id.* at 636 (citations omitted).

The passage of BAPCPA modified the rights of secured creditors that hold 910 claims. Previously, § 1325(a)(5)(B) allowed for the bifurcation or "cramdown" of a secured claim within the confines of the plan confirmation process and, accordingly, the corresponding notice provisions. *See In re Linkous*, 990 F. 2d 160, 162. As courts in this district have now clearly established, a debtor may no longer modify a secured creditor's 910 claim in a Chapter 13 plan pursuant to § 1325(a)(5)(B). *See In re Johnson,* 337 B.R. 269, 273. Under BAPCPA, a secured creditor's 910 claim is no longer limited to the extent of the value of the collateral pursuant to § 506(a). Thus, a secured creditor may expect that if it has a 910 claim, it will be treated as if fully secured, and that only if the debt underlying its claim was incurred outside of the 910-day period will § 506(a) be applied.

In this case, the Debtor's Plan did not afford RAC with notice adequate to entitle it to preclusive effect. RAC was entitled to expect that its claim would be treated pursuant to the provisions of BAPCPA. Here, the Plan did not state that RAC's claim was, in fact, a 910 claim or set forth the date that the debt was incurred. As a result, RAC had no notice that it held a 910

9

claim which was being treated in a manner contrary to the provisions of BAPCPA.  It is not unduly burdensome to require a debtor to clearly convey information sufficient to provide a creditor with meaningful notice.[1]

Based upon the foregoing, to the extent that its claim is not paid in full under the Plan, RAC is entitled to an order stating that its claim will not be discharged upon completion of the Plan  and that the Vehicle will remain subject to RAC's lien until the claim has been paid in full  Therefore, the Defendant's Motion to Dismiss must be denied.

IT IS SO ORDERED.

---

[1]  The court need not decide at this time whether RAC was entitled to some other form of heightened notice, such as service under Rule 7004.  In this case, it is sufficient for the court to find that the contents of the Plan did not convey adequate information to RAC regarding its claim and the treatment thereof.

Service List

Dorothy Elizabeth Williams
3962 McGhee's Mill Road
Semora, NC 27343

Edward C. Boltz
6616-203 Six Forks Road
Raleigh, NC 27615-6524

Regional Acceptance Corp.
c/o James S. Livermon, III
P. O. Box 353
Rocky Mount, NC 27802-0353

Richard M. Hutson, II
Chapter 13 Trustee
P.O. Box 3613
Durham, NC 27702

Michael D. West
P. O. Box 1828
Greensboro, NC 27420-1828